# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEPHANIE LYNN EMMONS,

        Plaintiff,

v.                                         CIV 19-0102 KBM

ANDREW M. SAUL,
Commissioner of Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) filed on July 17, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3*; *6*; *7*. Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

### I.    Procedural History

On September 22, 2014, Ms. Stephanie Lynn Emmons ("Plaintiff") filed applications with the Social Security Administration for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), and for Supplemental Security Income ("SSI") under Title XVI of the SSA. Administrative

Record[1] (AR) at 119, 129. Plaintiff alleged a disability onset date of April 14, 2014. AR at 120, 130. Disability Determination Services ("DDS") determined that Plaintiff was not disabled both initially (AR at 137) and on reconsideration (AR at 151). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her applications. AR at 185.

At the hearing, Plaintiff was represented by counsel, William Scott Rode.[2] AR at 48, 71. Both Plaintiff and a vocational expert ("VE") testified during the *de novo* hearing. *See* AR at 71-118. ALJ Michael Leppala issued an unfavorable decision on January 26, 2018. AR at 48-62. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 247), which the Council denied on December 6, 2018 (AR at 1-4). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a sequential evaluation process to determine eligibility for

---

[1] Document 11-1 contains the sealed Administrative Record. *See Doc. 11-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

[2] Although the ALJ's decision refers to Plaintiff's attorney as "William Rode," the hearing transcript refers to Mr. Rode erroneously as "Mr. Roady." *Compare* AR at 48, *with* AR at 71.

benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[3] ALJ Leppala found that Plaintiff "ha[d] not engaged in substantial gainful activity since April 14, 2014, the alleged onset date." AR at 50

---

[3] ALJ Leppala first found that Plaintiff "me[t] the insured status requirements of the Social Security Act through December 31, 2018." AR at 50.

(citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, he concluded that

Plaintiff had the following severe impairments: degenerative disc disease, arthritis,

coronary artery disease, and affective disorders. AR at 51 (citing 20 C.F.R.

§§ 404.1520(c), 416.920(c)). The ALJ also noted that Plaintiff had the following non-

severe impairments: carpal tunnel syndrome, broken finger, hearing loss, ulcers, a

hernia, and migraines. AR at 51.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 52 (citing 20

C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step

Four, the ALJ considered the evidence of record and found that Plaintiff

> is capable of occasionally lifting and/or carrying up to 20 pounds, frequently
> lifting and/or carrying up to 10 pounds, standing and/or walking for about six
> hours in an eight-hour workday, and sitting for about six hours in an eight-
> hour workday, all with normal breaks. She can understand, carry out, and
> remember simple instructions and make commensurate work-related
> decisions, respond appropriately to supervision, coworkers, and work
> situations, deal with routine changes in the work setting, maintain
> concentration, persistence, and pace for up to and including two hours at a
> time with normal breaks throughout a normal workday. [She] is limited to
> simple, routine, and repetitive tasks and is suitable for jobs involving work
> primarily with things and not people.

AR at 54. ALJ Leppala found that Plaintiff "is unable to perform any past relevant work."

AR at 60 (citing 20 C.F.R. §§ 404.1565, 416.965). Yet, he also found that she can

perform the jobs of sales cashier, heavy equipment operator, spot welder, cashier

checker, and secretary. ALJ at 60. Consequently, the ALJ ultimately determined that

Plaintiff "has not been under a disability, as defined in the Social Security Act, from April

14, 2014, through the date of [the ALJ's] decision." AR at 61 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff raises two issues in her motion. She argues that (1) the Appeals Council erred when it determined that the medical evidence she submitted was not chronologically pertinent; and (2) the ALJ erred by improperly rejecting the opinion of her treating physician in violation of SSR 96-2p. *Doc. 18* at 1-2. For the reasons that follow, the Court reaches only the first issue.

### A. The Appeals Council Erred in Failing to Consider the Additional Medical Evidence Submitted by Plaintiff in Conjunction with her Request for Review.

Following the ALJ's decision, the Plaintiff submitted additional records to the Appeals Council, which were not considered by the ALJ in his January 26, 2018 decision. First, she submitted a Psychological Evaluation, a Medical Assessment of Ability to Do Work-Related Activities (Mental), and a Listing Form for 12.04 Affective Disorders from Eligio Padilla, Ph.D., all of which followed his April 9, 2018 evaluation of Plaintiff. AR at 10-20. Second, she submitted both a Consultative Examination/Impairment Rating, performed on April 9, 2018, and dated May 9, 2018, as well as Medical Assessments of Ability to Do Work-Related Activities (Physical and Non-Physical) from John Vigil, M.D. also dated May 9, 2018. AR at 30-37. On December 6, 2018, the Appeals Council issued a decision addressing these additional records and disqualifying them on the basis that they "d[id] not relate to the period at issue" and, therefore, "d[id] not affect the decision about whether [Plaintiff was] disabled." AR at 2.

Whether this evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart*, 353 F.3d 1185, 1191

(10th Cir. 2003). Evidence not previously before the ALJ must be considered by the Appeals Council if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[4] Additionally, the regulations provide that if a Plaintiff "submit[s] additional evidence that does not relate to the period on or before the date of [ALJ's] hearing decision . . . or the Appeals Council does not find [they] had good cause for missing the deadline to submit the evidence in [§ 404.935 and § 416.1435], the Appeals Council will send [them] a notice that explains why it did not accept the additional evidence and advise[] [them] of [their] right to file a new application." 20 C.F.R. §§ 404.970(c), 416.1470(c). Here, the Appeals Council disqualified the records submitted by Plaintiff because it found that they did not relate to the time period at issue.

Plaintiff argues that because the Appeals Council did not rule on whether she had good cause to submit the evidence when she did, the Court may forgo the good-cause analysis altogether. *Doc. 18* at 16-17. She likens her case to two other cases from this District: *Kiro v. Berryhill*, No. 18cv0089 SCY, 2019 WL 1331903 (D.N.M. Mar. 25, 2019) and *Holder v. Berryhill*, No. 17cv1206 LF, 2019 WL 2716758 (D.N.M. June 28, 2019). In both *Kiro* and *Holder*, the Appeals Councils applied the current version of 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5) and refused to consider requests for review of additional evidence.

---

[4] The Social Security Administration revised these regulations on December 16, 2016, with changes effective January 17, 2017. 81 Fed. Reg. 90, 987 (Dec. 16, 2016). Thus, the revisions were effective at the time the Appeals Council issued its decision here, on December 6, 2018.

In *Kiro*, the Appeals Council excluded additional evidence submitted by the plaintiff because it found the evidence immaterial. *Kiro*, 2019 WL 1331903, at *4. According to the "Notice of Appeals Council Action" attached by Plaintiff to her brief in this case, the Council in *Kiro* found that the additional evidence "[did] not show a reasonable probability that it would change the outcome of the decision." *Doc. 18*, Ex. A at 2. Accordingly, it did not consider the evidence. *See id.*

In reviewing the decision of the Appeals Council in *Kiro*, United States Magistrate Judge Yarbrough acknowledged the newly-promulgated good-cause requirement in 20 C.F.R. § 404.970(c). *Kiro*, 2019 WL 13331903, at *5 & n.8. He did not, however, discuss the application of that requirement to the facts in *Kiro*, emphasizing instead that the Appeals Council "did *not* accept and consider the new evidence" because it found the evidence immaterial. *Id.* Judge Yarbrough reasoned that "the Appeals Council's dismissal of the additional evidence's import on the grounds that it did not show a reasonable probability that it would change the outcome of the decision indicates that it ultimately found that the evidence did not qualify for consideration at all." *Id.* at *5 (citing *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013)). Judge Yarbrough ultimately denied the plaintiff's motion to remand, affirming the Appeal Council's decision that the new evidence was not material. *Id.* at *6-7.

In *Holder*, the plaintiff argued that the Appeals Council erred in refusing to consider an MRI taken days before the issuance of the ALJ's decision. *Holder,* 2019 WL 2716758, at *3. Like in *Kiro*, the Appeals Council in *Holder* determined that the evidence "d[id] not show a reasonable probability that it would change the outcome of the decision" and it, therefore, refused to consider or exhibit the evidence." *Id.* Helpfully,

United States Magistrate Judge Fashing distinguished between a **dismissal** of a request for Appeals Council review, which is not subject to further review, and the **denial** of a request for review. *Id.* at *4. She noted that when a claimant misses a deadline or is unable to show good cause, the Appeals Council will **dismiss** a request for review, rather than deny it. *Id.* (citing *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019)). But because the Appeals Council **denied** the plaintiff's request for review of the MRI on the basis of immateriality, Judge Fashing went on to consider whether that decision was in error. *Id.* at *4-5. Finding that the MRI evidence was "new, chronologically pertinent, and material in that there [was] a 'reasonable probability' that the additional evidence would change the outcome of the decision," Judge Fashing remanded the case to allow the Appeals Council to reevaluate the ALJ's decision in light of the additional evidence. *Id.* at *5-8.

Plaintiff submits that the rationale in *Kiro* and *Holder* stand in contrast to the rationale in *Knowlton v. Berryhill*, No. 18cv0194 KBM, 2019 WL 12996699 (D.N.M. Mar. 21, 2019). In *Knowlton*, the plaintiff submitted a request for review to the Appeals Council, which included not-previously-submitted medical records and a neuropsychological evaluation. *Id.* at *4. The Appeals Council explained that it had not considered the additional evidence because the plaintiff had failed to show good cause for neglecting to submit it earlier *and* because some of the additional evidence did not relate to the period at issue. *Id.* The Court declined to address whether the plaintiff's additional evidence was new, chronologically relevant or material, finding instead that the plaintiff "failed to pass the first hurdle of showing good cause for a delay in submitting the evidence." *Id.* at *5. The Court concluded that the Appeals Council had

properly rejected the additional evidence under the good-cause standard and denied the plaintiff's request for review. *Id.*

The Court agrees with Plaintiff that the instant case has more in common with *Kiro* and *Holder* than it does with *Knowlton*, as the Appeals Council here did not find that Plaintiff failed to show good cause for not previously submitting the reports from Drs. Padilla and Vigil. While the Commissioner suggests that Plaintiff failed to establish good cause, he concedes that the Appeals Council denied review on a separate basis. *Doc. 23* at 17. And as Plaintiff notes, the additional evidence submitted to the Appeals Council could not have been submitted to the ALJ prior to his decision, because it did not yet exist. *Doc. 18* at 17. In fact, Plaintiff explains that she was prompted by ALJ Leppala's unfavorable disability decision to acquire and provide additional evidence concerning her impairments. *Id.*

When an Appeals Council rejects additional evidence as immaterial or temporally irrelevant, as here, it implicitly characterizes that evidence as "non-qualifying."[5] *See Krauser v. Astrue*, 638 F.3d 1324, 1238 (10th Cir. 2011); *Kiro*, 2019 WL 13331903, at *6 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). Under such circumstances, the claimant may challenge that ruling on judicial review, and the matter must be remanded if the Court finds the evidence new, chronologically pertinent, and material. *Padilla*, 525 F. App'x at n.1. ("If the Appeals Council did not consider the additional evidence because it did not qualify for consideration . . . , then the question on appeal is whether the Appeals Council erred in failing to do so."). As the

---

[5] In contrast, the Tenth Circuit has clarified that if the Appeals Council *accepts* and *considers* the additional evidence submitted by the claimant, it implicitly finds that evidence "qualifying," and the court, on review, need not consider the requirements for qualification. *Krauser*, 638 F.3d at 1328.

Commissioner notes, recent revisions to the applicable regulations implemented the good-cause standard as well as a heightened materiality standard, requiring that there be "a reasonable *probability* that the additional evidence would change the outcome of the decision." *See* 20 C.F.R. §§ 404.970(a)-(b), 416.1470(a)-(b) (emphasis added). While the Commissioner maintains that Plaintiff's counsel failed "to explain how the evidence meets the requirements for submitting new evidence or what good cause, if any, he had for not submitting this evidence earlier," he concedes, as he must, that the Appeals Council articulated only one reason for its rejection of the evidence: the lack of temporal relevance. *See Doc. 23* at 17. The Court is constrained to review the propriety of the reason actually offered by the Appeals Council, not a *post hoc* rationale offered by the Commissioner. Because the Council rejected Plaintiff's additional evidence as non-qualifying, just as the Appeals Councils did in *Kiro* and *Holder*, the Court will proceed to a *de novo* analysis of whether that rejection was in error.

### 1. The additional evidence is new.

Plaintiff insists that the reports and records from Drs. Padilla and Vigil constitute "new" evidence. *Doc. 18* at 18. Additional evidence is "new" if it is "not duplicative or cumulative.*" See Threet*, 353 F.3d at 1191. Plaintiff suggests that the subject records are neither. The Court agrees. First, the evaluations, medical assessments, and listing forms simply did not exist at the time the ALJ issued his decision. The ALJ issued his decision in January 2018, and Dr. Padilla and Dr. Vigil evaluated Plaintiff months later, in April 2018. Additionally, Dr. Padilla's assessment includes Wechsler Adult Intelligence Scale IV ("WAIS-IV") and Mini-Mental State Exam ("MMSE") testing, which was not otherwise available in Plaintiff's medical records. *See* AR at 14-16. And Dr.

Vigil's assessment includes the only Pain Disability Questionnaire in the record. *See* AR at 32. Further, given the timing of their evaluations, both Dr. Padilla and Dr. Vigil had the unique opportunity to review all of Plaintiff's records from the entire relevant period before offering their opinions, rendering them "new" in that sense as well. *See* AR at 10-37.

### 2.    The additional evidence is chronologically pertinent.

The Appeals Council determined that the additional evidence submitted by Plaintiff did "not relate to the period at issue." AR at 2.  Although the evidence was authored after the ALJ's decision in this case, Plaintiff nevertheless insists that it is chronologically pertinent. *Doc. 18* at 20-21. The Commissioner, in contrast, maintains that Plaintiff has not met her burden to show that the additional evidence relates back to the relevant period. *Doc. 23* at 18. Indeed, the Commissioner suggests that Plaintiff could have submitted the additional evidence in support of a *new* application for benefits, claiming disability arising after January 2018 and using March 7, 2018, the date she requested review by the Appeals Council, as the protective filing date for that claim. *See Doc. 23* at 18.

But the Commissioner's view of chronological pertinence is too narrow. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ – that is, "the period 'on or before the date of the [ALJ's] hearing *decision.*" *Chambers*, 389 F.3d at 1143 (citing 20 C.F.R. § 404.970(b)). Significantly, in determining chronological pertinence, the Tenth Circuit has not focused on whether the evidence pre-dated the ALJ's decision, but whether the new evidence was pertinent to the issues that were before the ALJ. *See Padilla*, 525 F. App'x at 711.

Here, the records from Drs. Padilla and Vigil bear on the impairments considered by the ALJ during the relevant period, including Plaintiff's degenerative disc disease, arthritis, coronary artery disease, carpal tunnel syndrome, and affective disorder. They are not evaluations of new impairments previously unconsidered. Further, their evaluations came mere months after the ALJ issued his decision concerning these same impairments.

Additionally, the Medical Assessments of Ability to Do Work-Related Activities completed by Drs. Padilla and Vigil instructed them to consider Plaintiff's "medical history and chronicity of findings as **from 2014 to current examination**." AR at 18, 36-37. There is no indication in the records that they neglected to do so. Instead, the subject records appear to contain their longitudinal perspectives of Plaintiff's impairments. Dr. Padilla explained, for instance, that it was his "professional opinion . . . that [Plaintiff's] depression goes back to at least 2014 when she had to stop working and had to accept the notion that she will not only likely suffer from chronic pain and fatigue for the remainder of her life but that her condition will likely worsen as she ages." AR at 17. Both reports address earlier medical reports and findings, and they offer the doctors' own conclusions as to the severity of Plaintiff's impairments following their evaluations. *See* AR at 10-37.

Opposing Plaintiff's position that the subject evidence is chronologically pertinent, the Commissioner contends that "the fact that these doctors looked at some portions of the time-relevant administrative record is at best cumulative of evidence before the ALJ." *Doc. 23* at 19-22. The Court has already determined herein that the subject evidence is not cumulative of earlier records. But, more relevant to chronological

pertinence, the reports of Drs. Padilla and Vigil indicate that it was the intent of both doctors to offer findings and opinions applicable not only to the date of their evaluation but also to the period of time relevant to the ALJ's decision. In other words, the relevance of the subject reports is not restricted to the period after the January 26, 2018 disability decision. The Court finds the additional evidence to be chronologically pertinent.

### 3.    The additional evidence is material.

The Appeals Council did not pass on the materiality of Drs. Padilla and Vigil's reports, resting its rejection of this evidence on the lack of chronological pertinence alone. *See* AR at 2. Plaintiff now submits that the findings of Drs. Padilla and Vigil are not only chronologically pertinent, but also material, as they are more restrictive than the ALJ's RFC. *Doc. 18* at 18. In contrast, the Commissioner insists that the evidence is not material, arguing that it "does not have a reasonable probability of changing the outcome of the case." *Doc. 23* at 19.

Before 20 C.F.R. §§ 404.970 and 416.1470 were revised in 2017, evidence was considered "material" if there was a "reasonable *possibility* that it would have changed the outcome." *See Threet*, 353 F.3d at 1191 (emphasis added). But the recent revisions to these regulations effectively heightened the materiality standard, now requiring a "reasonable *probability*" that the evidence would have changed the outcome. *See* 20 C.F.R. §§ 404.970, 416.1470. Thus, the ultimate materiality question before the Court is whether there is a reasonable *probability* that the reports and evidence from Drs. Padilla and Vigil would have changed the outcome of her disability claim. To answer this

question, the Court begins by comparing the ALJ's RFC determination to the opinions expressed in those reports.

Once again, the ALJ found Plaintiff capable of occasional lifting and/or carrying up to 20 pounds, frequent lifting and/or carrying up to ten pounds, standing and/or walking for six hours in an eight-hour day, and sitting for six hours in an eight-hour workday with normal breaks. AR at 54. Additionally, he determined that she retained the capacity to understand, carryout and remember simple instructions; respond appropriately to supervisors and coworkers; deal with routine changes in a work setting; maintain concentration, persistence, and pace for two hours at a time; perform simple, routine, and repetitive tasks; and work in jobs involving primarily things and not people. AR at 54.

### a. Dr. Padilla's Report

Dr. Padilla found Plaintiff to have *marked* limitations in her abilities to:

> maintain attention and concentration for extended periods of time (i.e. 2-hour periods); . . . perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; . . . sustain an ordinary routine without special supervision; . . . work in coordination with/or proximity to others without being distracted by them; . . . complete a normal workday and workweek without interruptions from psychological based symptoms; . . . perform at a consistent pace without [an] unreasonable number and length of rest period; . . . get along with coworkers or peers without distracting them or exhibiting behavioral extremes; . . . maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; . . . respond appropriately to changes in the workplace; . . . [and] travel in unfamiliar places or use public transportation.

AR at 18-19.

The Commissioner argues that because Dr. Padilla's opinion is "generally consistent with the ALJ's mental RFC," Dr. Padilla's opinion would not have altered the outcome for Plaintiff. *Doc. 23* at 19. The Court is unpersuaded by this argument,

however. First, the Commissioner misstates the ALJ's RFC, contending that the ALJ restricted Plaintiff to "*unskilled*, simple, routine, and repetitive work." *Doc. 23* at 9 (emphasis added). In fact, the ALJ did not include an explicit restriction to "unskilled" work. AR at 54. More importantly, though, after comparing the ALJ's mental RFC to Dr. Padilla's opinion, the Court simply cannot agree that they are consistent. Instead, the limitations identified by Dr. Padilla are much more severe.

In contrast to the ALJ's RFC, Dr. Padilla found a number of *marked* impairments in mental abilities that, according to the Program Operations Manual Systems ("POMS"), are critical for performing *any* job, including: "[t]he ability to maintain concentration and attention for extended periods ( . . . approximately 2-hour segments . . .)"; "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "[t]he ability to sustain an ordinary routine without special supervision."; "[t]he ability to work in coordination with or proximity to others without being (unduly) distracted by them"; "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "[t]he ability to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes;" and "the ability to respond appropriately to changes in (a routine) work setting." Social Sec. Admin., DI § 25020.010(B)(2)(a)-(d), POMS, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited Jan. 15, 2020). Indeed, if the ALJ were to accept Dr. Padilla's opinions, they would preclude work altogether.

Notably, in response to questions from Plaintiff's attorney, the vocational expert testified that a hypothetical individual with the same RFC as the one determined by the ALJ here, who was additionally able to spend less than 15 minutes in an eight-hour workday in contact with co-workers and supervisors, would be precluded from all employment. AR at 116. Moreover, an individual with the same RFC who additionally missed two or more days of work per month would also not be employable in the national economy. AR at 116.

But the Commissioner submits that certain of Dr. Padilla's findings – that Plaintiff was markedly impaired in her ability to concentrate, persist, and adapt to changes in the workplace – contradict Dr. Padilla's own examination findings and test results as well as the record as a whole. *Doc. 23* at 20. For instance, he argues that Dr. Padilla's records describe Plaintiff as "alert, oriented, cooperative, with grossly intact attention, concentration, abstraction, judgment, insight, and decision-making; normal cognitive functioning, speech, and eye contact; and average intelligence and fund of knowledge." *Doc. 23* at 20 (citing AR at 13-16). Additionally, he insists that Plaintiff's "record often contain[s] normal psychiatric examinations." *Doc. 23* at 20 (citing AR at 349, 378, 389-91, 463, 471-72, 477, 576, 591, 705, 785-86, 794, 797, 800-01, 810, 813-14, 819-20, 831-32, 872-73, 878-79).

The Commissioner neglected to mention certain of Dr. Padilla's own findings, however, including that she "miss[ed] one of three words in 'recall,'" had a "dysphoric" mood, and received a GAF score of 45[6] and a Beck Depression Inventory ("BDI-II")

[6] A Global Assessment of Functions, or "GAF" score, is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *Am Psychiatric Ass'n, Diagnostic and*

score of 31/63, which Dr. Padilla explained was "consistent with Major Depression". AR at 13-14. Dr. Padilla's report indicates that he reviewed Plaintiff's medical records and conducted a clinical/diagnostic interview, a mental status exam, a BDI-II, and a WAIS IV. AR 10-13. Dr. Padilla also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) and a 12.04 Listing Analysis. AR at 18-20. He ultimately diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe," opining that her depression had commenced by at least 2014. AR 10-20.

Despite *some* "normal psychiatric examinations" in the record, the Court is not convinced that an ALJ would reject Dr. Padilla's opinions as internally inconsistent or inconsistent with the record, as the Commissioner suggests. As noted by Dr. Padilla, all four mental health professionals represented in Plaintiff's mental health records "have, to varying degrees, diagnosed depression and secondary anxiety." AR at 13. And the ALJ himself acknowledged that Plaintiff's "depression impacts her memory, her ability to interact with others and her ability to multi-task." AR at 57.

Further, M. Ellie Dloughy, MA, LPCC, Plaintiff's treating therapist, opined that Plaintiff had many of the same marked limitations in areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *See* AR 567-68. Although the ALJ gave Ms. Dloughy's opinion "little weight," he did so because she failed to provide adequate explanation or objective evidence and because her opinions were "inconsistent with the record." AR at 59. Given that Ms. Dloughy's opinions are largely consistent with those of Dr. Padilla, which in turn are supported by

_____

*Statistical Manual of Mental Disorders* § 3 (4th ed. 2010). A GAF score of 45 corresponds to "serious symptoms" or "serious impairment" in social, occupational, or educational functioning. *Id.*

some explanation and objective evidence, there is a reasonable probability that the ALJ's calculus for consistency with the record would be altered if he were to consider Ms. Dloughy's records alongside Dr. Padilla's records. And, critically, if the ALJ were to adopt even some of the additional limitations found by Ms. Dloughy and Dr. Padilla, Plaintiff's RFC would be much more restrictive and likely preclude employment. Ultimately, the Court finds that the records Dr. Padilla provided are material and that there is a reasonable probability that they would change the outcome of Plaintiff's disability claim.

### b. Dr. Vigil's Report

Dr. Vigil evaluated Plaintiff on April 9, 2018, a few months after the ALJ's unfavorable disability determination. *See* AR at 30. Following his review of Plaintiff's medical records and his own physical examination, Dr. Vigil assessed chronic low back pain, chronic left hip pain, rheumatoid arthritis, bilateral carpal tunnel syndrome, and chronic depression and anxiety. AR at 30, 34. He opined that Plaintiff had "moderately severe to severe functional limitations and [was] severely limited in both vocational and avocational activities," explaining that she had "significant and substantial pain with even minimal activity as well as at rest." AR at 34-35. In contrast to the ALJ's much less restrictive findings, Dr. Vigil found that Plaintiff could lift and/or carry less than five pounds occasionally, stand and/or walk for less than two hours in an eight-hour workday, sit for less than four hours in an eight-hour workday, must periodically alternate between sitting and standing, should never kneel, stoop, crouch, or crawl, and should never handle, finger, or keyboard with either hand. AR at 36. He also found *marked* limitations in Plaintiff's ability to:

maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently; . . . complete a normal workday or workweek without interruptions from pain or fatigue based symptoms; . . . perform at a consistent pace without unreasonable number and length of rest periods.

AR at 37. Ultimately, Dr. Vigil opined that Plaintiff's impairments would preclude her from performing even sedentary work on a full-time basis. AR at 35-37.

The Commissioner characterizes Dr. Vigil's opinions as "extreme" and "inconsistent with the record in front of the ALJ." *Doc. 23* at 20. First, he suggests that, contrary to Dr. Vigil's opinions, the record demonstrates that Plaintiff "often had intact motor skills, normal muscle strength without lifting restrictions, and a normal gait." *Doc. 23* at 20 (citing AR at 56-57, 391-92, 447-48, 477, 547, 550, 553, 555, 561, 563, 573-605, 619, 623, 730, 745, 800, 806, 813-14, 819-20, 822-27, 831-32, 873). The Commissioner emphasizes the ALJ's finding that Plaintiff engaged in conservative treatment, primarily treating her pain with medication and occasionally steroid injections. *Doc. 23* at 20 (citing AR at 56, 447-48, 454, 545, 618-19, 621, 623, 732, 781, 805, 810, 831, 853). Additionally, he observes that Dr. Vigil's own examination results showed "normal range of motion in Plaintiff's neck, hips, and knees, some reduced range of motion in her back, and suspected symptom magnification." *Id.* at 21.

The Commissioners' summary of Dr. Vigil's report is not entirely comprehensive, however. For instance, he does not mention the Pain Disability Questionnaire administered by Dr. Vigil, in which Plaintiff received a score of 37 out of 150, indicating severe problems with chronic pain affecting activities of daily living. *See* AR at 32. Nor does he mention the tenderness Dr. Vigil discovered in Plaintiff's back, bilateral paraspinous muscle, SI joints, left hip, joint line medially and laterally in both knees, and

wrists. AR at 34. While the Commissioner acknowledges "some reduced range of motion in [Plaintiff's] back," he does not specify that Dr. Vigil's found that Plaintiff had 0 degrees of extension. AR at 34. In addition, he does not discuss Dr. Vigil's observations that Plaintiff's gait was "slow," that she was unable to squat or hop, or that she had difficulty walking on toes or heels, getting on the exam table, and moving from supine to prone position. *See* AR at 34. He also fails to discuss Plaintiff's "positive Tinel's and Phalen's test bilaterally,"[7] the "chronic arthritic changes in both the DIP and PIP joints of [her] hands," or the "numbness and tingling [she experienced] in both hands." AR at 33-34. And while Dr. Vigil did suspect some symptom magnification, as the Commissioner highlights, it was also his impression that Plaintiff exhibited "normal and appropriate pain behavior during the examination" and provided "good and consistent effort." AR at 33.

There is no question that Dr. Vigil's records and opinions are relevant to the functional limitations inquiry here. The more difficult question is whether they would change the outcome for Plaintiff. The Commissioner maintains that they would not, because they are "extreme" and "inconsistent with the record in front of the ALJ." *Doc. 23* at 20. To be sure, Dr. Vigil's findings are more restrictive than those of the ALJ. They are also more restrictive than those of Plaintiff's treating physician, Raena Singh, M.D.,

---

[7] "Tinel's Sign" and "Phalen's Maneuver" are test used to diagnose carpal tunnel syndrome. *See How Do I know if I Have Carpal Tunnel Syndrome?,* WebMD, https://www.webmd.com/pain-management/carpal-tunnel/carpal-tunnel-diagnosis#1 (last visited Jan. 16, 2020). "Tinel's Sign" is present, or "positive," when a doctor taps or presses on a patient's median nerve in their wrist with a reflex hammer and the patient feels "an electric-shock-like sensation." *Id.* Phalen's Maneuver is a test whereby the doctor presses on the back of a patient's hands and fingers together with their wrists flexed and fingers pointed down, requiring them to maintain that position for 1-2 minutes. *Id.* If the patient's fingers tingle or become numb, the test indicates that they have carpal tunnel syndrome. *Id.*

who treated Plaintiff for back, hip, and knee pain and who, like Dr. Vigil, completed a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical). *See* AR at 864.

Where Dr. Vigil found *marked* limitations in Plaintiff's ability to (1) "maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently"; (2) "complete a normal workday or workweek without interruptions from pain or fatigue based symptoms"; and (3) "perform at a consistent pace without unreasonable number and length of rest periods", Dr. Singh found only moderate or slight limitations in these areas. *Compare* AR at 37, *with* AR at 864. Additionally, where Dr. Vigil determined that Plaintiff would be precluded from even sedentary work, (AR at 35-37), Dr. Singh concluded that "if given provisions for rest[,] claimant should be able to perform non-labor intensive work," (AR at 864).

Notably, the ALJ gave Dr. Singh's opinions "little weight" on the basis that her "treatment records and objective evidence [did] not support the limitations she assess[ed]," "the opinion was inconsistent with [her] treatment notes showing conservative treatment," she did "not provide a full functional assessment of [Plaintiff's] abilities," she "[did] not use vocational terminology," and she "[did] not provide objective findings to support the limitations [she] endorsed." AR at 59. But Dr. Vigil's report provided a more thorough functional assessment, used vocational terminology, and was at least arguably supported by objective findings. *See* AR at 30-37. And even if the Court rejected certain of Dr. Vigil's opinions as inconsistent with the record, it is unlikely that all of his opinions would be rejected on that basis. Significantly, Dr. Vigil offered opinions on limitations not addressed by other treating or evaluating physicians,

sometimes in areas where the ALJ specifically noted a void of medical opinions. That Dr. Vigil was the only medical source to opine regarding certain restrictions, arguably increases the materiality of his report.

For instance, the ALJ, in rejecting Plaintiff's subjective complaint that she was unable to sit for more than ten to fifteen minutes at a time, noted that the record "d[id] not reflect any treating or evaluating physician limiting the Claimant's ability to sit." AR at 57. But Dr. Vigil, of course, offered an opinion as to Plaintiff's limitations in sitting, finding that she could sit for *less than four hours* in an eight-hour day. AR at 36. He further found that Plaintiff required the ability to alternate between sitting and standing to relieve pain or discomfort. AR at 36. Notably, these opinions find some support in the imaging of Plaintiff's lumbar spine, which shows signs of degenerative disc disease and facet changes of the lumbar spine as well as records indicating that Plaintiff's lower back pain with sciatica was aggravated by sitting for long periods. *See, e.g.*, AR at 754, 770, 808.

Dr. Vigil also uniquely opined regarding significant manipulative restrictions, where other treating and evaluating physicians did not. *See* AR at 36. The ALJ, in concluding that Plaintiff's carpal tunnel syndrome was not a severe condition, noted that there were "no objective treatment notes indicating that [Plaintiff's carpal syndrome] causes more than minimal work-related restrictions." AR at 51. But Dr. Vigil found that Plaintiff should *never* engage in handling, fingering, or keyboarding in either hand; he also found that Plaintiff should only *occasionally* engage in reaching, pushing, or pulling. AR at 36. These restrictions find support in Dr. Vigil's own examination of Plaintiff's hands, fingers, and wrists, which were positive for Tinel's and Phalen's tests and

"reveal[ed] chronic arthritic changes in both the DIP and PIP joints" as well as "mild to moderate tenderness in the wrists." *See* AR at 34. Additionally, X-rays of Plaintiff's hand in 2017 showed "degenerative change of the proximal interphalangeal joint fourth finger . . . [and] comminuted fracture . . . of the middle phalanx." *See*, *e.g.*, AR at 738.

Ultimately, Dr. Vigil's opinion, if adopted, would necessitate a more restrictive RFC than the one the ALJ assessed and would, in fact, lead to a finding that Plaintiff is disabled. Because there is a reasonable probability that the additional evidence from Dr. Vigil would change the outcome of the decision, the Court finds the evidence to be material.

The Commissioner summarizes his argument concerning Plaintiff's additional evidence as follows: "The[] opinions [of Drs. Padilla and Vigil] do not tip the scales of evidence so greatly as to disturb the ALJ's decision, which remains supported by a mere scintilla of evidence even when the late evidence is considered." *Doc. 23* at 21. However, because the Appeals Council did not accept or consider the new evidence in denying Plaintiff's request to review the ALJ's decision, the only question before the Court is whether the Appeals Council should have done so. *Padilla*, 525 F. App'x at 712, n. 1 (distinguishing the questions before the court when the Appeals Council rejects and does not consider additional evidence in denying review and when the Appeals Council accepts and considers evidence in denying review). Having determined herein that the additional evidence was new, material, chronologically pertinent, and has a reasonable probability of changing the outcome of Plaintiff's disability claim, the Court finds that the Appeals Council erroneously failed to consider it as part of Plaintiff's request for review. As such, the case must be remanded for the

Appeals Council to review the new evidence as required under 20 C.F.R.

§§ 404.970(a)(5), 416.1470(a)(5).

> **B.    The Court Does Not Reach the Issue of Whether the ALJ Improperly Rejected the Opinion of Plaintiff's Treating Physician.**

Plaintiff advances the additional argument that the ALJ improperly rejected the opinion of her treating physician, Dr. Singh. *Doc. 18* at 22. The Commissioner insists that the "the ALJ's treatment of Dr. Singh's opinion was reasonable." *Doc. 23* at 10.

Because the Court concludes that remand is required as set forth above, the Court will not address this remaining claim of error. *See Chambers*, 389 F.3d at 1143 (explaining that it is for the Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

## V.    Conclusion

Plaintiff has demonstrated that the Appeals Council erred by failing to consider the additional evidence that she submitted in conjunction with her request for review. The Court therefore remands this matter so that the Appeals Council may reevaluate the ALJ's decision in light of the completed record.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) is **GRANTED**. A final order pursuant to Rule 58

of the Federal Rules of Civil Procedure will be entered concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent